UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PENDLETON HEIGHTS GAY-STRAIGHT ALLIANCE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 1:21-cv-02480-JRS-TAB |
| SOUTH MADISON COMMUNITY SCHOOL CORPORATION, PRINCIPAL, PENDLETON HEIGHTS HIGH SCHOOL, | ) ) ) ) ) | |
| Defendants. | ) | |

**Order on Motion for Preliminary Injunction**

The Pendleton Heights Gay-Straight Alliance (the "PHGSA") is a student group at Pendleton Heights High School.  Its purpose is to provide gay, lesbian, bisexual, transgender, and allied students the opportunity to meet and provide support to each other; to inform the school community of the existence of these students; and to foster an environment of tolerance and acceptance regardless of sexual orientation.  (Axel-Adams Decl. ¶ 17, ECF No. 10-1.)  Pendleton Heights High School (the "School") allows the PHGSA to meet on campus, but not to use the School's bulletin boards, to advertise through announcements on the School's radio station, to fundraise, or to be listed in the student handbook.  (*Id.* at ¶ 19.)  However, the School provides other student groups with access to these resources. (Rickert Dep. 23, ECF No. 16-2.)  The PHGSA moved for a preliminary injunction, contending that this differential treatment violates the Equal Access Act, the First Amendment, and the Equal

1

Protection Clause. (ECF No. 8.) Because the Court finds that the PHGSA has shown a likelihood of success on the merits of its Equal Access Act claim, and that the other requirements of a preliminary injunction are satisfied, the Court grants the Motion for a Preliminary Injunction, (ECF No. 8).

## Background and Legal Standard

Access to resources like the bulletin boards and radio station depends on whether the School classifies the student club as "corporation sponsored" or "non-corporation sponsored." (Rickert Dep. 57, ECF No. 16-2.) "Corporation sponsored" clubs are "directly related to the [School's] curriculum." (ECF No. 16-3 at 1; Defs.' Br. 3, ECF No. 16.) Corporation sponsored clubs can advertise on the bulletin boards and radio station, fundraise, and be listed in the student handbook; non-corporation sponsored clubs cannot. (Rickert Dep. 23–24, ECF No. 16-2.) The School categorizes numerous clubs as corporation sponsored, but most relevant here is the Outdoor Adventure Club. (Neeley Aff. ¶ 4, ECF No. 16-8.) The PHGSA, on the other hand, is a non-corporation sponsored club, so it is limited to holding meetings. (Axel-Adams Decl. ¶ 19, ECF No. 10-1; Rickert Dep. 24, ECF No. 16-2.) The PHGSA's Motion requests that the PHGSA also be permitted to use the bulletin boards and radio station, to fundraise, and to be included in the handbook.

A party seeking a preliminary injunction "must show that it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest." *Christian*

*Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (citing *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 619 (7th Cir. 2004)).  If the moving party makes such a showing, the district court "must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied."  *Id.*

## Discussion

The PHGSA asserts that the School's differential treatment violates the Equal Access Act, the First Amendment, and the Equal Protection Clause.  (Mot. Prelim. Inj. ¶ 1, ECF No. 8.)  Because the Court agrees that the PHGSA is likely to prevail on its claim under the Equal Access Act, the Court does not address the First Amendment or Equal Protection Clause arguments.  *See, e.g.*, *Bd. of Educ. of Westside Cmty. Schs. v. Mergens*, 496 U.S. 226, 247 (1990) (finding that school's actions violated the Equal Access Act and therefore not deciding whether First Amendment required the same result).

### A. *Likelihood of Success on the Merits*

The Equal Access Act (the "Act") prohibits public secondary schools that receive federal financial assistance and that maintain a "limited open forum" from denying "equal access" to students who wish to meet within the forum based on the content of the speech at such meetings.  20 U.S.C. § 4071(a); *Mergens*, 496 U.S. at 233, 246–47 ("Because [the school] maintains a 'limited open forum' under the Act, it is prohibited from discriminating, based on the content of the students' speech, against students who wish to meet on school premises during noninstructional time.").  A school has a

3

"limited open forum" if it "grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time." 20 U.S.C. § 4071(b).

The School admits that it is a public secondary school that receives federal financial assistance. (Defs.' Answer ¶ 29, ECF No. 15.) It further concedes that it has created a "limited open forum" by allowing noncurriculum related student groups to meet on school premises during noninstructional time. (Defs.' Br. 16, ECF No. 16). Nevertheless, the School claims it has not run afoul of the Act because it treats all corporation sponsored, i.e., curriculum related, clubs alike, and all non-corporation sponsored, i.e., noncurriculum related, clubs alike. Specifically, curriculum related clubs like the French Club and the Outdoor Adventure Club can use the School's bulletin boards and radio station, fundraise, and be listed in the student handbook, while noncurriculum related clubs like the PHGSA and the Fellowship of Christian Athletes cannot. However, at least one club the School classifies as curriculum related, the Outdoor Adventure Club, is, in reality, noncurriculum related. Thus, by providing the Outdoor Adventure Club—but not the PHGSA—with access to certain benefits, the School has denied the PHGSA "equal access" under the Act.

*Mergens* controls. There, school officials allowed a group of students seeking to form a Christian club to meet after school, but officials refused to give the club "official recognition," which provided for access to the school newspaper, bulletin boards, the public address system, and the club fair. 496 U.S. at 247. The school argued that all of its clubs were curriculum related; therefore, there was no limited open forum and

4

no obligation to comply with the Act. *Id.* at 243–44. But the Court cautioned that permitting schools to evade the Act by "strategically describing existing student groups" would "render the Act merely hortatory." *Id.* at 244. Instead, the Court defined "noncurriculum related," examined the school's student groups, and concluded that, despite the school's labeling, some groups were noncurriculum related. *Id.* at 237–46. And by allowing only some noncurriculum related groups to access the bulletin boards and school newspaper, the school violated the Act. *Id.* at 246–47.

The same is true here. The Outdoor Adventure Club fits squarely within the *Mergens* definition of "noncurriculum related," notwithstanding the School's assertion otherwise. And since the Outdoor Adventure Club receives benefits the PHGSA does not—inclusion in the handbook, permission to fundraise, access to the bulletin boards and radio station—the PHGSA's rights have been violated under the Act.

The Court stated that "noncurriculum related" is best interpreted "broadly" to mean "any student group that does not *directly* relate to the body of courses offered by the school." *Mergens*, 496 U.S. at 239. It identified four situations in which a student group "directly relates" to a school's curriculum: (1) "if participation in the group is required for a particular course;" (2) "if participation in the group results in academic credit;" (3) "if the subject matter of the group concerns the body of courses as a whole;" or (4) if "the subject matter of the group is actually taught, or will soon be taught, in a regularly offered course." *Id.* at 239–40. The Outdoor Adventure Club

5

does not satisfy any of these criteria.

Students in the Outdoor Adventure Club "participate in a variety of outdoor, physical activities including camping, horseback riding, canoeing, rock climbing, hiking, spelunking, and skiing." (Neeley Aff. ¶ 5, ECF No. 16-8.) The School acknowledges that participation in the Outdoor Adventure Club is not required for a particular course and does not result in academic credit. (Rickert Dep. 38–39, ECF No. 16-2.) The School also admits that the Club does not "concern[] the body of courses as a whole." *Cf. Mergens*, 496 U.S. at 240 ("A school's student government would generally relate directly to the curriculum to the extent that it addresses concerns, solicits opinions, and formulates proposals pertaining to the body of courses offered by the school."). Nevertheless, the School contends the Outdoor Adventure Club is "directly related to the physical education curriculum" because it "teaches students the skills necessary to participate in a variety of physical activities, teaches the benefits of being involved in various types of physical activities, and encourages students to participate regularly in physical activity as part of a healthy lifestyle." (Defs.' Br. 26–27, ECF No. 16; *see also* Neeley Aff. ¶¶ 6–9, 14, ECF No. 16-8.) The School cites various physical education standards developed by the Indiana Department of Education. (Defs.' Br. 26–27, ECF No. 16.) But merely stating that a club "directly relates" to the curriculum does not make it so. The School does not contend that "the subject matter of" the Outdoor Adventure Club—camping, horseback riding, canoeing, rock climbing, hiking, spelunking, and skiing—is "actually taught, or will soon be taught, in a regularly offered course." Therefore, the

Outdoor Adventure Club does not fall within any of the four categories identified in *Mergens* as "directly relating" to a school's curriculum.

In fact, the School's argument is nearly identical to one the Supreme Court rejected in *Mergens*. There, school officials asserted that Subsurfers, a club for students interested in scuba diving, was curriculum related because it furthered "one of the essential goals of the Physical Education Department—enabling students to develop lifelong recreational interests." *Mergens*, 496 U.S. at 244. The Court rejected the notion that "curriculum related" means "anything remotely related to abstract educational goals." *Id.* The Court concluded that while the school's physical education classes included swimming, "scuba diving [was] not taught in any regularly offered course at the school." *Id.* at 245. Further, the scuba diving club did not relate to the curriculum as a whole, like student government; nor was participation required by a course; nor did participation result in academic credit; thus, the club was noncurriculum related. *Id.* Like the Subsurfers scuba diving club, the Outdoor Adventure Club is noncurriculum related. And since the Outdoor Adventure Club can use the School's bulletin boards, advertise through announcements on the School's radio station, fundraise, and be listed in the student handbook, while the PHGSA cannot, (Rickert Dep. 23–24, ECF No. 16-2), the PHGSA has been denied "equal access" under the Act. *Mergens*, 496 U.S. at 247; *see, e.g., Straights and Gays for Equality v. Osseo Area Schs.-Dist. No. 279*, 540 F.3d 911, 915 (8th Cir. 2008) (school violated the Act by providing a "noncurriculum related student group mislabeled as a curriculum related group" with "greater access to communication

7

avenues" than it provided to Straights and Gays for Equality, another noncurriculum related group). Therefore, the PHGSA has met its burden of showing that it is likely to succeed on the merits of its Equal Access Act claim.

### B. Irreparable Harm, Adequate Remedy at Law, Public Interest, Balancing of Harms

The remaining factors in the preliminary injunction analysis also weigh in the PHGSA's favor. "The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) (citations omitted). While this Court's analysis focused on the PHGSA's injury under the Equal Access Act, rather than under the First Amendment, courts have noted that the principle articulated in *Walker* applies in Equal Access Act cases just the same, as the Act "protects free speech rights and expressive liberties." *Straights and Gays for Equality (SAGE) v. Osseo Area Schs.-Dist. No. 279*, 471 F.3d 908, 913 (8th Cir. 2006) (presumption of irreparable harm applied to group that could hold meetings but could not use the school's public address system or yearbook or hold fundraising events); *Boyd Cnty. High Sch. Gay Straight All. v. Bd. of Educ. of Boyd Cnty.*, 258 F. Supp. 2d 667, 692 (E.D. Ky. 2003) (presumption of irreparable harm that results from the loss of First Amendment freedoms applies to violations of Equal Access Act because Act protects "expressive liberties").

As to the balancing of harms, the School claims an injunction would force it to allow all noncurriculum related groups to publicize, thereby turning the two-to-three-

minute school announcements into a longer, unmanageable affair; the bulletin boards would become covered with flyers; and the student handbook would have to be reprinted.  (Defs.' Br. 29, ECF No. 16.)  Not only do these harms appear minor, but the School could mitigate them, such as by instituting a one-flyer-per-club-per-bulletin-board limit, provided the limits apply equally to all noncurriculum related groups; or by prohibiting all noncurriculum related clubs from meeting on campus, thereby avoiding implication of the Act at all.  Further, "the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) (cleaned up).  The PHGSA has made a strong showing that it is likely to succeed on the merits of its claim.  When coupled with the minimal harm an injunction would inflict on the School, the Court finds that the injunction should be granted.

Finally, the PHGSA requests that the injunction be issued without bond.  (Mot. Prelim. Inj. 2, ECF No. 8; Pl.'s Br. 20, ECF No. 10.)  Rule 65 of the Federal Rules of Civil Procedure provides that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  However, the PHGSA states that bond should not be required in this case because issuance of the injunction will not result in any monetary harm to the School.  *See Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010) (district court can waive bond requirement when there is no danger the opposing party will incur any damages from the injunction).  The School

does not respond to this argument or contend that it would incur damages as a result of the injunction. Failure to respond to an argument results in waiver, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010), and the Court sees no reason the School would suffer monetary harm. To the extent reprinting the student handbook would result in expense, the PHGSA has indicated that the School may delay reprinting until the next school year and may update the online handbook in the meantime. (Pl.'s Reply 19, ECF No. 17.) Accordingly, the Court will waive the bond requirement.

## Conclusion

The PHGSA's Motion for Preliminary Injunction, (ECF No. 8), is **granted**. The injunction shall issue in a separate order. *See, e.g.*, *MillerCoors LLC v. Anheuser-Busch Cos., LLC*, 940 F.3d 922, 922–23 (7th Cir. 2019) (per curiam) (remanding for failure, in part, to enter injunction as a separate document).

**SO ORDERED.**

Date: 12/22/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered parties of record via CM/ECF.